**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| LENA POGREBINSKY, On Behalf of Herself and All Others Similarly Situated<br><br>               Plaintiff,<br><br>  vs.<br><br><br>POM WONDERFUL, LLC, a Delaware Limited Liability Company, and Does 1-10 inclusive,<br><br>        Defendants, | CASE NO.<br><br>JUDGE |

## COMPLAINT

Plaintiff, by and through her undersigned counsel, individually and on behalf of all Ohio residents who purchased POM Wonderful pomegranate products during the Class Period defined below (collectively "Plaintiff"), for her Complaint against Defendants, on information and belief, the investigation of her counsel, and personal knowledge, states as follows.

## JURISDICTION AND VENUE

1.      This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds

$5,000,000 and is a class action in which some members of the class are citizens of states different from the state where POM Wonderful is a citizen.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District as Defendant:

a.      is authorized to conduct business in this District and has intentionally availed itself to the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District:

b.      currently does substantial business in this District; and

c.      is subject to personal jurisdiction in this District.

## PARTIES

3.      At all times relevant to this matter, Plaintiff was and is a resident of Cuyahoga County, Ohio and a citizen of Ohio.  Plaintiff purchased POM Wonderful products from retail stores located in Cuyahoga County on numerous occasions.  Plaintiff purchased and consumed the Defendant's POM Wonderful juices and juice products because she saw and relied on the purported health benefits described by POM's website, advertising, and in the stores where she purchased POM products, including product labeling.

4.      Plaintiff, on behalf of herself and all Ohio residents who purchased POM Wonderful pomegranate products (the "Class") during the Class Period, as further defined below, bring this class action against Defendants, POM Wonderful, LLC and Does 1-10.

5.      Plaintiff's allegations are based in part on the investigation of counsel, including but not limited to reviews of advertising and marketing material, public filings, articles, journal actions, and other publicly available information, and thus on information and

-2-

belief, except as to the individual actions of Plaintiff, as to which Plaintiff has personal knowledge.

6.      Plaintiff specifically relied on POM Wonderful's false, unfair, deceptive and/or unconscionable claim regarding $34 million in research as supporting the purported health benefits: including but not limited to the prevention or mitigation of heart disease, various types of cancer and Alzheimer's disease as advertised by POM Wonderful on POM's website[1].

7.      Plaintiff has been damaged in that she purchased POM Wonderful products and has lost the money she spent purchasing such products while being misled about their benefits and she would not have otherwise purchased such products or not for the price that she paid because she believed the health benefits claimed by POM.

8.      Defendant POM Wonderful LLC ("POM") is a Delaware Limited Liability Company headquartered at 11444 West Olympic Blvd., 10th Floor, Los Angeles, California 90064.

9.      Defendant advertises and sells its pomegranate juice and juice products throughout Ohio and the United States, including the brands that are the subject of this lawsuit.

10.      Each of DOES 1-10 is the agent, servant, partner, joint-venturer, co-venturer, principal, director, officer, manager, employee, or shareholder of one or more of its co-defendant(s) who aided, abetted, controlled, and directed or conspired with and acted in furtherance of said conspiracy with one or more of its co-defendant(s) in said co-defendant(s) performance of the acts and omissions described below.  Plaintiff sues each of these Doe Defendants by these fictitious names because Plaintiff does not know these Defendants' true names and capacities.

---

[1] http://www.pomwonderful.com/health/health-story

11.     Plaintiff alleges violations of the Ohio Consumer Sales Practice Act and the Ohio Deceptive Trade Practices Act through Defendant's promotions, advertising and labeling.

12.     At all times relevant, Plaintiff heard and saw various POM promotions, commercials and advertisements for pomegranate juice and juice products.

13.     In reliance on the false, unfair, deceptive and/or unconscionable claims that purported to increase life expectancy, benefit heart health, prevent various cancers and treat numerous ailments made in said promotions, commercials and advertisements, Plaintiff purchased POM Wonderful products.  However, unbeknownst to Plaintiff at the time of purchase, these claims have no reasonable basis in fact.

## COMMON FACTUAL ALLEGATIONS

14.     Defendants placed products into the stream of commerce that do not have the health benefits, characteristics or qualities that are represented through POM's marketing campaign.

15.     POM produces, markets, and sells POM Wonderful brand pomegranate juice, juice blends, teas and extracts.

16.     Since 2002, POM has promoted the consumption of its POM Wonderful brand 100% pomegranate juice products to consumers as having special health benefits, including but not limited to, the prevention, mitigation, and/or treatment of prostate cancer, cardiovascular disease, erectile dysfunction, and other age-related medical conditions.

17.     POM also has promoted the consumption of its POM Wonderful brand 100% pomegranate juice beverage product to consumers as an all-purpose health elixir that can prevent and/or delay the effects of advancing age, prolong youth, and prolong life.

18.     POM claims in its advertising that its POM Wonderful brand 100% pomegranate juice beverage product is healthier than other beverages, including other 100% juice beverage products.

19.     POM claims in its advertising that the juice from the "Wonderful" variety of pomegranates used in POM's 100% pomegranate juice beverage products has special antioxidant powers to protect health, promote good health and prevent disease which are not found in other foods or beverages, including the juice from other pomegranate fruit varieties.

20.     POM claims in its advertising and product labelling that its health and medical claims for its pomegranate juice are "backed by $25 million in medical research," "backed by $25 million in bulletproof medical research," or that POM Wonderful is "the only pomegranate company whose products are backed by $34 million in scientific research"[2].

21.     Not only does POM claim that its pomegranate juice prevents and mitigates diseases, but that competent and reliable scientific evidence *proves* that POM pomegranate juice prevents and mitigates diseases, prolongs life, and has special antioxidant powers and health and medical benefits not available from other foods or beverages. The prevalence of such research and continued assurances from POM regarding the validity of medical research would cause a reasonable consumer to believe such statements, and did, in fact, cause the Plaintiff to believe and rely upon such statements in making the decision to purchase POM's pomegranate juice.

22.     POM's disease prevention and disease mitigation claims are false, deceptive, unfair and unconscionable because there is no competent and/or reliable scientific evidence and/or substantiation for POM's mitigation, treatment and/or prevention of disease claims.

---

[2] http://www.pomwonderful.com/about/company

23.    In 2005, the National Advertising Division (NAD) of the Council of Better Business Bureaus found that the medical research POM relied on was inadequate to substantiate POM's claim that drinking eight ounces per day of POM pomegranate juice can reduce arterial plaque by up to 30% or prevent plaque build-up in healthy people.

24.    In 2006, the NAD found that POM's research did not substantiate its claims that POM juice contains "more naturally occurring antioxidants than any other drink," and that drinking its pomegranate juice can help prevent premature aging, cancer, heart disease, arterial plaque build-up, stroke, Alzheimer's disease, or any other disease.

25.    In 2009, the United Kingdom's Advertising Standards Authority (ASA) "considered the evidence submitted by POM Wonderful to support the antioxidant benefits of pomegranate juice but concluded that it fell short of showing any direct relation between consuming the product and a longer life."  As a result, the ASA found a POM advertisement, "and particularly the claim 'Cheat death,' misleadingly exaggerated the health benefits likely to be achieved by drinking the product."

26.    In 2010, The U.S. Food and Drug Administration sent a warning letter to the president of POM Wonderful declaring the claims made by POM, through their labelling and website, serious violations of the Federal Food, Drug, and Cosmetic Act (the "Act") and the applicable regulations in Title 21, Code of Federal Regulations.  The FDA cautioned that the claims made by POM established the product as a drug, because it appeared the intended use was for the mitigation, treatment or prevention of disease and these claims had not been substantiated through any valid medical research.  As such, the FDA found that the marketing of this product was in direct violation of the Act.

27.    POM lacks competent and/or reliable scientific evidence that consuming its pomegranate juice has meaningfully greater antioxidant potency and related health benefits than other juices, including other pomegranate juices.

28.    POM failed to disclose to consumers that the majority of the studies cited by POM in support of its health claims were actually paid for by POM, lacked independence and were not properly constructed to ensure accurate results.

29.    POM falsely claims that its pomegranate juice has medically proven benefits in the mitigation, treatment, and/or prevention of serious chronic disease.

30.    POM falsely claims that its pomegranate juice is proven to prevent and/or mitigate atherosclerosis, heart attacks and related health conditions.

31.    POM makes the following false, unfair, deceptive and/or unconscionable advertising claims for POM Wonderful pomegranate juice on its website and both in its print and in-store advertising:

- Medical research shows that drinking 8 ounces per day of POM pomegranate juice can result in improved blood flow to the heart;

- Medical research shows that drinking 8 ounces per day of POM pomegranate juice can decrease arterial plaque by 30% (on a website page depicting a bottle of POM hooked to an intravenous apparatus like a blood transfusion);

- POM Wonderful pomegranate juice is "heart therapy."

32.    The false, unfair, deceptive and/or unconscionable message portrayed by POM advertising and promotion is that the consumption of POM pomegranate juice, is scientifically proven to prevent and/or mitigate atherosclerosis and reduce heart attacks.

33.    These claims are false, unfair, deceptive and/or unconscionable.  In fact, competent and/or reliable scientific research does *not* establish that POM Wonderful brand

pomegranate juice prevents and/or mitigates atherosclerosis or heart attacks under the conditions of use represented in POM's marketing claims.

34.    POM falsely, unfairly, deceptively and/or unconscionably made claims that its pomegranate juice is scientifically proven to prevent and/or mitigate cancer and other prostate health related conditions

35.    POM's website page entitled, "The Truth About Our Pomegranates," claims, under the heading "Backed by Science," that "To date, numerous published medical studies have documented the benefits of drinking pomegranate juice, benefits that include improved. . . prostate health."

36.    One of POM's opening website animations begins with a comic-strip-style message, "HURRY!  Prostates everywhere are in danger!"  Bottles of POM juice then zoom across the screen and a new message then appears, issuing from a POM bottle: "I'm off to save PROSTATES!"  This is accompanied by the tagline, "The Antioxidant Superpower.  Learn about POM's promising health benefits."

37.    Clicking on the animation's "Learn about POM's promising health benefits" link takes the viewer to POM's "Health Benefits" page which summarizes, among other things, research purporting to show that consuming POM pomegranate juice may slow the progression of prostate cancer.

38.    In combination, the animation and its associated links claim that medical research establishes that POM juice rescues prostates from the danger of disease - i.e., that POM pomegranate juice prevents or mitigates prostate disease.  The advertisement coupled with the research funded by POM and cited on the website would cause a reasonable

consumer to believe such statements, when in reality these statements have no reasonable basis in fact.

39.     POM's website page on "Cancer" shows a bottle of POM juice with the heading, "Cancer - Emerging Science" and the claim that antioxidants in POM pomegranate juice and POM tea "might slow or help prevent the development of cancer."

40.     A POM commercial states, "Pomegranates contain powerful antioxidants needed to prevent cancer and disease" and depicts actors wearing white lab coats consuming POM pomegranate juice as a convenient way to obtain these cancer prevention benefits.

41.     These advertisements represent claims that medical research establishes that consuming POM pomegranate juice mitigates, treats, and/or prevents prostate cancer.

42.     These claims are false, unfair, deceptive and/or unconscionable.  Contrary to POM's claims, there is no reasonable basis in fact that POM pomegranate juice mitigates, treats, prevents, or otherwise slows the progress of, or cures prostate cancer or any other prostate disease.  POM's false, unfair, deceptive and/or unconscionable claims that medical research shows POM juice to be effective in mitigating, treating, and/or preventing prostate cancer and other prostate disease are especially pernicious in view of the prevalence and gravity of these diseases.

43.     POM falsely, unfairly, deceptively and unconscionably claims that its pomegranate juice is proven to prevent or delay aging.

44.     POM's website page entitled "Health Benefits: Aging" advertises that POM has been proven to maintain youth, defer aging, and prolong life.

45.    Other POM advertisements and promotional materials disseminated by POM, including but not limited to in-store advertising, claim that POM juice extends life, including advertisements bearing the following messages:

- "Cheat Death." [showing POM bottle wearing a broken hangman's noose]

- "Death defying."

- "Life support." [showing POM bottle hooked to IV unit]

- "SAVING LIVES . . . one mortal at a time."

46.    All of these advertisements constitute false, unfair, deceptive and/or unconscionable claims that medical research has shown POM pomegranate juice to be effective in slowing the effects of aging, warding off death, and/or extending or prolonging life.    There is no competent and/or reliable scientific evidence that consuming POM pomegranate juice provides consumers with special benefits in delaying death and/or prolonging life.    POM falsely, unfairly, deceptively and/or unconscionably made claims that its pomegranate juice is scientifically proven to prevent, mitigate, and/or cure other diseases.

47.    Among other diseases and conditions discussed on its website, and in its advertising and promotional materials, POM claims that scientific and medical research proves that POM pomegranate juice lowers blood pressure.    POM's website also claims disease benefits relating to Alzheimer's disease, dementia, arthritis, and diabetes among others, as conditions treatable with POM pomegranate juice.

48.    The references to various diseases and conditions on POM's website and in its advertising and promotional materials, in the context of POM's constant references to its pomegranate juice being "backed" by $25 million in bullet proof medical research, are designed to, and do, communicate to consumers that drinking POM pomegranate juice has

been proven to have special benefits in mitigating, treating and/or preventing age-related diseases, including arthritis, dementia, Alzheimer's disease, and diabetes. These claims are false, unfair, deceptive and/or unconscionable because these statements would cause a reasonable consumer to believe such statements, without a reasonable basis in fact.

49.    POM's other advertisements and promotions build on and implicitly reference these specific disease prevention and cure claims by portraying POM pomegranate juice as an all-purpose health elixir that has special power to prevent and/or mitigate chronic diseases associated with aging, and thereby prolong life.

50.    For example, POM's website advertisement page, [3]contains the following claims:

- "Cheat death." [Showing POM bottle wearing broken hangman's noose]

- "Death defying."

- "Decompress." [Showing POM bottle in blood pressure testing device]

- "Forever young."

- "Health Angel."

- "Heart therapy."

- "Holy Health! $25 million in medical research."

- "Life guard."

- "Life preserver."

- "Life support." [showing POM bottle hooked to IV unit to resemble a blood transfusion]

- "Relax, you'll live longer."

---

[3] http://www.pomwonderful.com/about/ads

- "SAVING LIVES . . . one mortal at a time."

- "Lucky I have super HEALTH POWERS!"

- "Survival kit."

51.     On the front page of POM's website, the consumer is presented with one of a rotating series of animations.  These each feature a bottle of POM juice in the guise of a super-hero character accompanied by the tagline "The Antioxidant Superpower" and accompanied by messages such as:

- "Have no health fear . . .  POM IS HERE!"

- "Risk your health in this economy!?! NEVER!"

- "Prostates everywhere are in danger . . .  I'm off to save PROSTATES!"

Each animation prompts viewers to follow a link to "learn about POM's promising health benefits," where the more detailed medical claims described in this Complaint are presented.

52.     A POM print advertisement for POM pomegranate juice claims: "In a time of major health problems, one 16-ounce hero will unleash its **incredible healing powers:** POM Wonderful® 100% pure pomegranate juice.  Backed by an unheard-of $25 million in medical research, The Antioxidant Superpower® sweeps into action to help fight for heart and prostate health." (emphasis original)

53.     POM advertises that its pomegranate juice is "clinically tested."

54.     POM advertises that its medical research is "bulletproof," which implies to consumers that the research conclusively proves the health benefits claimed by POM.

55.     An example of the lack of credibility and deceit employed by POM in defense of their disease curative claims is the support they site for Erectile Dysfunction ("ED").  In a study published in the Journal of Urology in 2005 (*Oxidative Stress in Arteriogenic Erectile*

*Dysfunction: Prophylactic Role of Antioxidants.* Exhibit 1) the test consisted of an experiment using seven (7) rabbits who were induced into ED "by balloon injury of iliac arteries."  Penile erection was then "examined by electrical stimulation of the cavernous nerve."  The study concluded that pomegranate juice was one of several dietary products that may be a useful tool in preventing or treating ED.  This finding fails to establish competent or reliable scientific evidence necessary to support POM's claims.

56.    In an additional study relied on by POM to support its ED claims, the authors admitted: "The limitations of this pilot study include cohort size, treatment period duration, and compliance issues. . . **the results of this study did not achieve statistical significance** . . ."(emphasis original). (*Efficacy and Safety of Pomegranate Juice on Improvement of Erectile Dysfunction in Male Patients with Mild to Moderate Erectile Dysfunction: A Randomized, Placebo-controlled, Double Blind, Crossover Study.* Exhibit 2 attached.)

57.    Moreover, POM's human research studies are based on a small sample size, frequently less than one hundred people, and in many cases fewer than twelve subjects.  These studies also include people who are already suffering from a disease and often measure variables whose effects are indirect and unclear.  Conversely, the FDA prefers studies that are based on a large sample for studies.  The agency seeks to measure individuals that do not have conditions that a consumer seeks to avoid and looks to unambiguous events or surrogate markers for a disease to establish reliable studies.[4]

58.    Even when not paired with an explicit medical claim, the claims that POM pomegranate juice is backed by, or is the subject of, "millions of dollars" worth of "medical" research and "clinical" testing communicates to consumers that POM pomegranate juice has

---

[4] David Brown, *It's a 'Life Preserver'! It's 'Death-Defying'! It's . . . A Super Ad Campaign!* The Washington Post, April 21, 2009, http://www.washingtonpost.com/wp-dyn/content/article/2009/04/20/AR2009042002428.html.

medical benefits for the mitigation, treatment, and/or prevention of disease that are proven by competent and reliable scientific evidence.

59.     These advertisements discussed in paragraphs 49 through 52 herein, both independently and in the context of POM's more explicit disease prevention such as the studies referenced in paragraphs 54 through 56 herein, and cure claims, communicate to consumers that POM pomegranate juice is not just a food, but a medicine that is proven to ward off and slow the progress of serious and often fatal disease.

60.     POM falsely, unfairly, deceptively and/or unconscionably claims that POM Wonderful 100% pomegranate juice has nutritional and disease related benefits that are superior to other juices

61.     POM prices its juice products at a higher price-point than comparable juices. POM's false representations have allowed its juice products to achieve sales that exceed that of many competitors despite the higher price charged for POM juice products.  Consumers, like Plaintiff, have been willing to pay the higher price for these products because they believed that POM had special health benefits due to the misrepresentations by POM.

62.     A POM magazine advertisement in a March 2009 issue of *Yoga Journal* claims: "Made with 100% pure pomegranate juice and fortified by $25 million in medical research, it's the only juice on the planet powerful enough to fight the good health fight."

63.     In this and other advertisements, POM claims that its pomegranate juice has been proven by medical research to offer disease-fighting benefits conferred by no other juice.

64.     This claim is false, unfair, deceptive and/or unconscionable because there is no competent and/or reliable scientific evidence that POM pomegranate juice confers nutritional or disease-related benefits that any other juices "on the planet" do not.

65.    POM also claims that its pomegranates are nutritionally superior to
pomegranates used in other products.  In a page entitled "Wonderfully Superior" on its
website, POM claims that "Juice from Wonderful variety pomegranates is extremely high in
polyphenol antioxidants," implying that juice from other pomegranates is not extremely high
in polyphenol antioxidants.

66.    POM also states, in discussing the "medical research" that supports its disease-
related claims, that:

> **All of these studies featured patients who drank POM
> Wonderful 100% Pomegranate Juice, not any other brands.**
> Since POM is totally different from other pomegranate juices (see
> below), that means ours is the only one you can trust to deliver
> genuine pomegranate health benefits.

67.    POM further states, "Actually, we are the only pomegranate juice backed by
any medical research at all" and "all of the research has been done on POM Wonderful 100%
pomegranate juice."  Those statements are false, unfair, deceptive and/or unconscionable.

68.    Numerous POM statements in advertising and promotional materials repeat this
false, unfair, deceptive and/or unconscionable claim that POM's "Wonderful" variety
pomegranates have been shown by research to be unique and nutritionally superior to all other
pomegranates.  The purpose and effect of these misrepresentations is to falsely disparage all
competing pomegranate products.  There is no competent and/or reliable scientific evidence
that the POM Wonderful variety of pomegranate used in POM's products is nutritionally
superior to, or confers greater health benefits than, the pomegranates used by POM's
competitors.

69.     By making such claims, POM causes consumers, including Plaintiff, to believe that buying POM's products, even at higher price points, confers significantly more health benefits on the purchaser than comparable products at lower price points.

70.     POM's marketing presents a false and misleading picture to consumers that POM products confer significant, scientifically proven health benefits, that are substantially different from other juices, including other pomegranate juices, in these health benefits, and are bottled directly from freshly squeezed pomegranates, without any intermediate concentrate/reconstitution process.

71.     POM maintains a webpage entitled "From Tree to Bottle," available under the "POM Truth" tab of the POM website, http://www.pomegranatetruth.com.  The page contains a video that purports to depict POM's juice manufacturing process.  The video, however, omits the pasteurization and concentration-reconstitution process.

72.     The video is approximately one minute and five seconds.  It begins with a farmer cutting a pomegranate from a tree and placing the fruit in a sack.  The worker then boards the back of a truck and empties his sack of pomegranates into a container containing other pomegranates.  Next, the video shows a conveyor belt filled with pomegranates being washed and sorted onto different conveyor belts and then several pomegranates are funneled into large pipes.  From the pipes, juice appears and drains into a large vat of dark red liquid.  The video depicts plastic tubes being compressed by a machine into the POM bottle shape.  The bottles pass along the conveyor belt and are filled with red liquid, capped and date coded by laser.  After coding, the caps of nine bottles are shown with the camera zooming out to images of large cardboard boxes.  The boxes are raised to where the bottles are suspended and

then dropped back down onto the conveyor belt.  Presumably, the boxes have been filled with the finished POM bottles.

73.     In its entirety, the voice over the video image states: "Welcome to POM Wonderful Orchards in sunny central California.  Here we grow and hand pick each wonderful variety pomegranate that goes into our juice.  Once the pomegranates are harvested, they are transported to our nearby juicing facility where they are washed, sorted, and conveyed to the juicing machines.  Our state of the art equipment delivers just the right amount of pressure to release the naturally rich red juice.  Much of the healthy antioxidant goodness comes from crushing the whole fruit, husk and all.  We even make and decorate our own distinctive bottles, shaped like two pomegranates stacked on top of each other.  Then, we fill the iconic bottles with 100% natural pomegranate juice.  We don't add sugar or coloring, like some other pomegranate juice brands.  In fact, every 16 ounce bottle contains the juice of four whole pomegranates.  Once filled, the bottles are sealed and date coded to maintain freshness.  They are sorted into cases, loaded into refrigerated trucks, and shipped to a store near you.  We are dedicated to ensuring quality from start to finish, to give you healthy, authentic pomegranate juice you can trust.  Enjoy!"

74.     In addition, POM misleads consumers in its print and internet advertisements by representing that its juice is not from concentrate.  POM packages its product in bottles that are shaped like two pomegranates on top of each other.  On the actual product, the top bulb contains the brand name, "POM Wonderful" and the name of the juice, "100% Pomegranate Juice;" the bottom bulb contains the words "from concentrate."  In its advertisements, POM prominently displays the entire front of the bottle, including its brand name and the name of the juice, but POM conceals the language that otherwise appears on the bottom of the bottle.

The concealed language includes the text that the product is "from concentrate."  POM conceals this language in its print and online advertisements, and when the advertisements are viewed as whole, they mislead consumers into believing that POM's juice is not from concentrate.  For example, one of POM's webpage greetings states, "Someone save me from fake pomegranate juices!" and is followed by the text, "Have no health fear, POM is here!"  The greeting purports to show the front of POM's bottle, including the label on top of asserting that the juice is 100% pomegranate juice, yet the bottom portion of the image conceals the "from concentrate" language that otherwise appears on the bottle.

75.     POM's website further states under the "FAQ" tab, in the "Health & Nutrition" section, "[s]ince POM Wonderful pomegranate juice is a refrigerated product, treat it as you would fresh milk or fresh orange juice!  POM Wonderful pomegranate juice must refrigerate at all times."  Yet, POM's juice is not fresh - it is from concentrate.  POM's promotion of its product on its website, therefore, causes reasonable consumers to believe that its juice is freshly squeezed, when it is not.

76.     As another example, in the January/February 2008 issue of Health magazine, POM's advertisement exclaims "Pure science."  Next to this phrase, the advertisement purports to show the front of the POM bottle, in its entirety, yet the "from concentrate" language is concealed.  The depiction of POM's product in the advertisement misleads the viewer into believing the product is not from concentrate.

77.     In the November 2008 issue of Prevention magazine, POM's advertisement explicitly states "Ingredients: Contains no trickery, deceit, excuses, shams, duplicity, fabrication, white lies, exaggeration, overpromises, tall tales or spin."  Yet the depiction of

POM's product conceals that it is "from concentrate." The advertisement purports to show the front of the POM bottle, in its entirety, yet the "from concentrate" language is concealed.

78.     In addition, in the November 2008 issue of Health magazine, POM's advertisement provides "Imitation may be sincere.  But is it pure?" Again, POM's advertisement conceals the fact that it is "from concentrate."  The advertisement leaves the viewer with the impression that they are seeing the entire front of POM's bottle, yet the words "from concentrate" that would otherwise appear on the bottom of POM's bottle are concealed.

79.     In the June 2009 issue of Health magazine, POM's advertisement states "100% PURE pomegranate juice to the rescue!" Again the depiction of POM's product conceals that it is "from concentrate."  The advertisement purports to show the front of the POM bottle, in its entirety, yet the "from concentrate" language is concealed.

80.     POM's print and online advertisements mislead consumers into believing POM's juice is not from concentrate.   POM continues to circulate these misleading advertisements in magazines and on the internet as it has done in prior years.

## CLASS ACTION ALLEGATIONS

81.     Plaintiff seeks to represent the Class defined below or class or classes further refined by the Court.

82.     Plaintiff brings the claims asserted herein on behalf of a Class defined as: All Ohio residents who purchased POM Wonderful pomegranate products primarily for personal, family, or household use, within the statutory limitations periods applicable to the herein-alleged causes of action (including, without limitation, the period following the filing of this action).  Excluded from the Class are any judicial officers presiding over this action, and Defendants, including their officers, directors and employees.  ("Class").

83.     Defendant's representations and omissions were material, were relied upon by Plaintiff and intended to be relied upon by the putative class, and resulted in damage to each and every member of the Class as alleged.

84.     The exact number of Members in the Class identified above is not known, but given published reports as to POM Wonderful's sales, which are in the tens of millions of dollars, it is reasonable to presume that the class is so numerous that joinder of individual Members is impracticable.

85.     There are questions of law and fact that are common to the proposed Class, including, but not limited to, the following:

a.      are the claims that POM made and is making regarding pomegranate juice and juice products false, unfair, deceptive and/or unconscionable;

b.      is POM making claims that its pomegranate juice or juice products have certain performance characteristics, uses or benefits that they do not have;

c.      is POM making claims that its pomegranate juice or juice products are of a particular standard, quality and/or grade, when they are not;

d.      is POM supplying pomegranate juice or juice products not in accordance with its representations;

e.      has POM engaged in false, unfair, deceptive and/or unconscionable acts or practices in connection with a consumer transaction;

f.     did POM know at the time the consumer transaction took place that the consumer would not receive the benefit from the consumer product that POM was claiming the consumer would receive;

g.     did POM adequately disclose to consumers that the studies cited by POM as support for its health claims were paid for by POM and not independent;

h.     did POM know or should it have known that the representations and advertisements regarding the pomegranate juice or juice products were unsubstantiated, false and misleading;

i.     did POM engaged in false, unfair, deceptive and/or unconscionable advertising;

j.     did POM use false, unfair deceptive and/or unconscionable representations in connecting with the sale of goods;

k.     did POM's representations cause a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods;

l.     did POM represent that goods have a certain sponsorship, approval, characteristic, ingredient, use or benefit that they do not have;

m.     did POM represent that goods are of a particular standard, quality or grade when they are of another;

n.     did POM represent that the goods were available to the consumer for a reason that did not exist;

        o.     did POM advertise goods with intent not to sell them as advertised;

        p.     did POM disparage the goods of another by false representations of fact;

        q.     did the Plaintiff and the Class Members that purchased the pomegranate juice and juice products suffer monetary damages and, if so, what is the measure of said damages;

        r.     are the Plaintiff and Class Members entitled to an award of punitive damages; and

        s.     are the Plaintiff and Class Members entitled to declaratory and injunctive relief.

86.     Plaintiff's claims are typical of the claims of the proposed Class.  Indeed, Plaintiff's claims are identical or nearly identical to Class Member's claims.

87.     Plaintiff will fairly and adequately represent and protect the interest of the proposed Class because, *inter alia*, Plaintiff's interests are not antagonistic to those of the Class and Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

88.     The questions of law and fact common to the Class Members, some of which are set forth above, predominate over any questions affecting only individual Class Members.

89.     Adjudicating this matter as a class action is superior to other available methods for adjudication because, *inter alia*, the expense and burden of requiring consumers to individually litigate these claims would make it impracticable or impossible for them to bring their claims.

90.     This matter is manageable as a class action.

91.     Unless a class is certified, Defendant will retain monies received as a result of its conduct that was taken from Plaintiff and proposed Class Members.  Unless a classwide injunction is ordered, Defendant will continue to commit the violations alleged, and the Members of the Class and the general public will continue to be misled.

92.     POM's unlawful conduct, including the unlawful acts described herein, and its continuing unlawful acts, are generally applicable to the Class as a whole making final injunctive relief appropriate.

### FIRST CAUSE OF ACTION

**For Violations of Consumers Sales Practice Act,
Ohio Revised Code Section 1345,** *et seq.*

93.     Plaintiff restates each and every paragraph of this Complaint as if fully set forth herein.

94.     This count is brought pursuant to Ohio's Consumer Sales Practices Act, Ohio Revised Code §1345, *et. seq.* (the "CSPA")

95.     Plaintiff is a consumer as defined by Ohio Revised Code §1345.01(D).

96.     POM is a supplier as defined by Ohio Revised Code §1345.01(C).

97.     POM's conduct described herein involves consumer transactions as defined in Ohio Revised Code §1345.01(A).

98.     POM violated and continues to violate the CSPA by engaging in the following practices proscribed by the following subsections of Ohio Revised Code §1345.02 in consumer transactions with the Plaintiff and the Class, which were intended to result in, and did result in, the sale of pomegranate juice and juice products to the Plaintiff and Putative Class:

(A) by "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction";

(B)(1) by representing that the products have "performance characteristics . . . uses, or benefits that [they] do [not] have";

(B)(2) by representing that the products are "of a particular standard, quality, grade, style [or] prescription" when they are not; and

(B)(4) by representing that the product "is available to the consumer for a reason that does not exist;

(B)(5) by representing that the products are being "supplied in accordance with a previous representation," when they are not;

(B)(8) by representing "[t]hat a specific price advantage exists, if it does    not."

99.    Pursuant to Ohio Adm. Code 109:4-3-10 (A) (Substantiations of Claims In Advertising) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:

Make any representations, claims or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims or assertions of fact.

100.    In conjunction with the violations of Ohio Revised Code §1345.02 set forth above, POM violated Ohio Adm. Code §109:4-3-10 because POM represents and claims in its advertisements to possess and rely upon clinical and/or scientific data, and POM cannot and has not substantiated the representations, advertising claims or assertions made in connection with the promotion of POM pomegranate juice and juice products.

101.    POM further violated and continues to violate the CSPA by engaging in the following practices proscribed by Ohio Revised Code §1345.03 in consumer transactions with

the Plaintiff and the Class, which were intended to result in, and did result in, the sale of pomegranate juice and juice products to Plaintiff and the Class:

> (A) because POM has engaged and is engaging in "an unconscionable act or practice in connection with a consumer transaction;"

> (B)(2) because POM "knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;"

> (B)(3) because POM "knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;"

> (B)(6) because POM "knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment;"

102. POM violated the CSPA and Ohio Administrative Code by representing though its advertisements the pomegranate juice and juice products as described when it knew, or should have known, that the representations and advertisements were unsubstantiated, false, unfair, deceptive and/or unconscionable and otherwise have no reasonable basis in fact.

103. Pursuant to the CSPA and the similar state laws, Plaintiff and the Class are entitled to rescind the consumer transactions, recover damages or other appropriate relief under Rule 23 of the Federal Rules of Civil Procedure.

104. The false, unfair, deceptive and/or unconscionable acts complained of herein have previously been declared to be false, unfair, deceptive and/or unconscionable and made available for public inspection including, but not limited to the Complaint and Judgment Entry attached as Exhibit 2, captioned *William J. Brown v. Town & Country Food Distributors, Inc.*,

Case No. 73-840, Court of Common Pleas, Montgomery County, Ohio, which is available for public inspection by the Attorney General of Ohio ("Town & Country").

105.    The Town & Country Complaint alleged violations of the CSPA because the defendant therein: misrepresented the quality, characteristics and health risks or health benefits of a food product offered for sale to Ohio consumers in violation of Ohio Revised Code §1345.02(B); committed unconscionable acts and practices in connection with the sale of a food product in violation of Ohio Revised Code §1345.03(A); knowingly made a misleading statement concerning the food product on which consumers rely to their detriment and in violation of Ohio Revised Code §1345.03(B)(6).  The Town & Country Complaint sought a permanent injunction preventing the defendant from continuing to engage in the false, unfair deceptive and/or unconscionable conduct in connection with the advertising of its food product and to make restitution to consumers who purchased the food items.

106.    In Town & Country, a Consent Judgment Entry was entered that permanently enjoined the supplier from: misrepresenting the quality, characteristics and health risks or health benefits of all food products offered for sale to consumers; knowingly making misleading statements or opinions concerning the sale of food products; misrepresenting the uses of food products; and placing advertisements which do not include accurate descriptions of food products being offered for sale to Ohio consumers.  In addition, the defendant in Town & Country was required to make full restitution.

107.    Accordingly, POM had notice that in connection with the sale of food products in Ohio, it is a false, unfair, deceptive and/or unconscionable act or practice to make misrepresentations regarding the quality of a food product, making misleading statements of opinion concerning a food product, misrepresenting the uses of a food product, and/or placing

inaccurate advertisements regarding the description of food products being offered for sale. POM was further placed on notice that if it did engage in such false, unfair, deceptive and/or unconscionable acts, it would be required to make ***full restitution*** and reimburse the purchase price to Ohio consumers that purchased the food product.

108.    Ohio Revised Code §3715.01(3)(a) defines food as articles used for food or drink for humans or animals.

109.    Ohio Revised Code §3715.60 states that a food is misbranded if its label is false and misleading in any manner.

110.    Ohio Revised Code §3715.52 prohibits the following acts or causing the following acts: the sale of any food that is misbranded; and, the misbranding of any food, the dissemination of any false advertisement, which is defined in Ohio Revised Code §3715.68 as an advertisement of food that is false or misleading in any manner.

111.    Ohio Revised Code §§ 3715.52, 3715.60 and 3715.68 all provided further notice to POM that mislabelling, misbranding, disseminating false advertising in connection with the same of a  food product was in violation of Ohio law.

112.    As a direct and proximate result of Defendant's violation of Ohio Revised Code §1345.03, Plaintiff has suffered actual damages, the full extent of which will be proven at trial.

113.    Pursuant to Ohio Revised Code §1345.09(A), Plaintiff is entitled to rescind the consumer transactions or recover actual damages plus an amount not exceeding $5,000 in non-economic damages.

114.    Pursuant to Ohio Revised Code §1345.09(B), Plaintiff is entitled to rescind the transactions or recover three times the amount of the Plaintiff's actual economic damages or

two hundred dollars, whichever is greater plus an amount not to exceed $5,000 in noneconomic damages or recover damages or other appropriate relief in a class action under Ohio Civil Rule 23.

115.    Pursuant to Ohio Revised Code §1345.09(D), Plaintiff and the Class seek an order enjoining the above-described wrongful acts and practices of the Defendant and for restitution and disgorgement.

116.    Pursuant to § 1345.09(E), this Complaint will be served upon the Ohio Attorney General, Richard Cordray.

117.    Plaintiff and the Class reserve the right to allege further violations of Ohio's CSPA as POM's conduct is ongoing.

## SECOND CAUSE OF ACTION

### For Violations of Ohio's Deceptive Trade Practices Act
### Ohio Revised Code Section 4165, *et seq.*

118.    Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

119.    POM is a person as defined in Ohio Revised Code §4165.01(D).

120.    For the reasons discussed above, POM has engaged in false, unfair, deceptive, untrue and misleading advertising in violation of the following subsections of Ohio's Deceptive Trade Practices Act §4165.02 because POM:

(A)(2) "Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods. . . "

(A)(4) "Uses [and has used in the past] deceptive representations. . .in connection with goods . . .";

(A)(7) "Represents that goods. . . have sponsorship, approval, characteristics, ingredients, uses [or] benefits. . . that they do not have. . .";

(A)(9) "Represents that goods. . . are of a particular standard, quality or grade" and "they are of another;"

(A)(10) "Disparages the goods . . . of another by false representation of fact;"

(A)(11) "Advertises goods . . . with intent not to sell them as advertised."

121.    Plaintiff and the Class reserve the right to allege other violations of the law under the deceptive trade practices acts as POM's conduct is ongoing.

122.    POM's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members.  Plaintiff has suffered injury in fact and has lost money as a result of POM's deceptive conduct.

123.    Plaintiff and the Class seek equitable relief and to enjoin POM on the terms that the Court considers reasonable.

## PRAYER FOR RELIEF

**WHEREFORE**, the representative Plaintiff, on behalf of herself and the Members of the Class defined herein, prays for judgment against the Defendant as follows:

A. For an order certifying this action and/or common issues raised herein as a "Class Action under the appropriate provision of Federal Rule of Civil Procedure 23(a), 23(b) and 23(c); designating Class Representatives; and appointing the undersigned to serve as class counsel.

B. For notice of class certification and of any relief to be disseminated to all Class Members and for such other further notices as this Court deems appropriated under Fed. R. Civ. P. 23(d)(2);

C. For an order requiring complete and immediate disclosure of all studies, reports, analyses, data, compilations, and other similar information within the possession,

custody, or control of Defendant concerning, relating to, or involving the purported health benefits of POM pomegranate juice or juice products;

D.   For an order barring Defendant from destroying or removing any computer or similar records which record evidence related to the purported health benefits of POM pomegranate juice or juice products;

E.   For an order barring Defendant from attempting, on its own or through its agents, to induce any putative Class Members to sign any documents which in any way releases any of the claims of any Putative Class Members;

F.   For an award of compensatory damages in the amount to be determined for all injuries and damages described herein;

G.   For an award of punitive damages to the extent allowable by law, in an amount to be proven at trial;

H.   Awarding restitution and disgorgement of POM's revenues to the Plaintiff and the proposed Class Members;

I.   Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them, restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by the Court to be wrongful;

J.   Ordering POM to engage in a corrective advertising campaign;

K.   Awarding attorney fees and costs; and

L.   Providing such other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: June 30, 2010

Respectfully Submitted,

 /s/ Frank E. Piscitelli
**PISCITELLI LAW FIRM**
Frank E. Piscitelli, Jr. (0062128)
55 Public Square, Suite 1950
Cleveland, Ohio 44113
216.931.7000 Telephone
216.931.9925 Facsimile
Frank@feplaw.com

**CLIMACO, WILCOX, PECA,
TARANTINO & GAROFOLI CO., L.P.A.**
John R. Climaco
John A. Peca
Pat Warner
55 Public Square, Suite 1950
Cleveland, Ohio 44113
216.621.8484 Telephone
216.771.1632 Facsimile
jrclim@climacolaw.com
japeca@climacolaw.com
pwarner@pwarnerlaw.com

**SCOTT KALISH CO., L.L.C.**
D. Scott Kalish
James L. Deese
1468 West 9th Street, Suite 405
Cleveland, Ohio 44113
216.502.0570 Telephone
scottkalishcollc@cs.com

Attorneys for Plaintiff

### CERTIFICATE OF SERVICE


I hereby certify that on the 30th day of June 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing.

/s/ *Frank E. Piscitelli*
FRANK E. PISCITELLI
**PISCITELLI LAW FIRM**
55 Public Square, Suite 1950
Cleveland, Ohio 44113
216.931.7000 Telephone
216.931.9925 Facsimile
frank@feplaw.com